[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING MOTION FOR REVOCATION OF COMMITMENT
Anthony T., the biological father of the minor child Joshua T., has filed a motion[1] to revoke the child's commitment to the Department of Children and Families (DCF). In his motion, the biological father, who is a resident of the State of Nebraska, seeks exclusive custody and guardianship of Joshua. CT Page 14243
Joshua, who was born on August 21, 1992, was committed to DCF custody as a neglected child on August 1, 1997. The court subsequently extended commitment, for an additional period not to exceed one year, at a hearing on June 30, 1998.
The child's mother, Marissa B.,[2] and DCF both object to the biological father's motion for revocation of commitment. The contested hearing commenced on September 30, 1998 and was continued until November 23, 1998, when the matter concluded. All parties, and the minor child, were represented throughout the proceeding.
 FACTUAL FINDINGS
Anthony T. and Marissa B. met when the father was stationed with the Navy in New London. They married in March of 1992, and Joshua was born the following August. The Navy thereafter transferred Anthony T. to South Carolina, where the family remained until the father's discharge from the service in September 1994. After the father's release from the service, the family returned to Connecticut, but subsequently relocated to Nebraska, Anthony T.'s home of origin. Anthony T. claimed that the mother left Nebraska and came back to Connecticut with Joshua in September 1995. From the date of his birth until the time the mother returned here, Joshua lived with both of his parents, and Anthony T. played an active role in raising him. The mother subsequently filed for a dissolution of marriage in Connecticut. Although Anthony T. testified that he called lawyers in Nebraska and Connecticut for advice about the dissolution, he did not participate in the divorce proceedings. The court concludes from his testimony during this hearing that the biological father exhibited little interest in having custody of Joshua, or visitation with him, at that time.
The evidence at trial also established that the father was extensively delinquent in his child support obligations for several years prior to the hearing on this motion. Anthony T. submitted a copy of a check under date of September 12, 1998, and a child support payment coupon, into evidence at the hearing. (Father's Exhibit 6). The father had incurred a child support arrearage of $3,200 prior to that September 12th payment. He had not paid child support to the child's mother, nor the State of Connecticut, since early in 1996. (Father's Exhibit 6 and Father's Exhibit 4, Page 6). Prior to the start of this hearing (when he arrived in Connecticut with gifts for Joshua), the CT Page 14244 father sent no presents to the child on birthdays and holidays during the past year and a half.
Marissa B., who has a history of criminal offenses and substance abuse, lost custody of Joshua on May 6, 1997 when DCF invoked an administrative "96 hour hold." The immediate reasons for the child's removal on that date were the mother's substance abuse and neglectful conduct. Earlier, in December 1996, DCF confirmed that the child had been sexually abused by an adult male friend of the mother. (Petitioner's Exhibit 3, Page 2).
A status report submitted by DCF in connection with this revocation hearing noted that "During Joshua's placement, Marissa has been in and out of prison, and in and out of substance abuse programs. Currently, her whereabouts [are] unknown to DCF." (Petitioner's Exhibit 3, Page 2). The status report also noted that "Marissa has wafted in and out of Joshua's life. Sometimes she telephones, and sometimes she forgets. Promises are made, but not kept." (Petitioner's Exhibit 3, Page 2).
Joshua was committed to DCF's care and custody on August 1, 1997. Anthony T. did not attend the neglect commitment hearing. (Testimony of DCF Social Worker Lorna Oakley). Joshua has resided in the home of his maternal great grandfather, Wilson B., since February 1997 (Testimony of Wilson B.)
Anthony T. was represented by his court-appointed attorney at the August 1, 1997 neglect hearing. The biological father did not attend that hearing. He never requested rehabilitation services through DCF, and he never requested that the court approve reunification expectations for him. Anthony T. did instruct his attorney in the neglect matter to seek custody of Joshua In conjunction therewith, the father's counsel moved the court successfully for an investigation of Anthony T.'s circumstances in Nebraska, to determine if he would be a suitable to serve as Joshua's custodian. For reasons still unclear to this court, DCF was somewhat dilatory in implementing the court order that Nebraska child welfare authorities investigate the fathers home and circumstances there.
The Nebraska Department of Health and Human Services (NHHS) evaluated the homes of both Anthony T. and Sheila F. (the child's paternal grandmother) in that state. The report on Sheila F. was received by DCF on January 20, 1998. (Father's Exhibit 5). It notes that the paternal grandmother, who is a social worker with CT Page 14245 NHHS, "could provide a stable home for Joshua and seems highly motivated to do so." (Father's Exhibit 5, Page 11).
DCF received the report on the father's situation in Lincoln, Nebraska on January 23, 1998. (Father's Exhibit 4). The father lives with his grandmother in a home there. (Father's Exhibit 5, Page 6). He was convicted on August 23, 1996 for driving while under the influence, on November 7, 1995 for negligent driving (this charge was reduced from a count of driving while under the influence), and on September 23, 1994 for attempted purchase of alcohol by a minor. (Father's Exhibit 4, Page 5). Charges of disturbing the peace and trespass were dismissed on July 10, 1997. (Father's Exhibit 4, Page 5). A charge of assault, stemming from a fight with his then girl friend in Lincoln on September 24, 1997, was still pending when the Nebraska report was compiled. Anthony T. testified about his record during this hearing and denied assaulting his ex-girl friend. He admitted pushing her with his foot. He was not convicted in connection with the alleged domestic violence matter. Anthony T. was placed on probation because of the DUI conviction and required to get out-patient substance abuse treatment. (Father's Exhibit 4, Page 6). The home study noted that "Anthony has not made an attempt to follow the previous recommendation for probation, including attending AA two times per week, attending an outpatient alcohol treatment program, nor attending driving courses." (Father's Exhibit 4, Page 9). Anthony T. admitted during his testimony that he was still on probation for the DUI matter and that he still had not completed a requirement that he attend eight Alcoholics Anonymous meetings. Although he claimed to have complied with court-mandated substance abuse treatment, the nature and extent of that therapy, and its impact upon Anthony T., are not clear to this court. Details of the incidents which resulted in the father's arrest support the conclusion that most of them occurred after he consumed alcoholic beverages. The NHHS home study notes with respect to the father's record:
"This worker reviewed the above accounts of police contacts with Anthony and explained that the behavior evident through these reports was quite concerning. It seems apparent that Anthony has either a pattern of aggression and poor decision making and/or a pattern of consuming alcohol and then becoming aggressive and making poor decisions (including 2 DUIs, harassing or becoming physically aggressive with or harassing (sic) girlfriends, and getting into a scuffle due to no CT Page 14246 hamburger available. This [pattern], recorded by contacts with the police started the day before he turned 21 and has continued until the month before the first interview." (Father's Exhibit 4, Page 8).
When the evaluator in Nebraska inquired if Anthony T. believed that he had an alcohol problem, the father answered that his problems resulted from associating with the "wrong friends" or "bad girlfriends." (Petitioner's Exhibit 4, Page 9). Although the Anthony T. and his mother, Sheila F., testified that the father has adequately addressed his substance abuse issues, the court is not persuaded that this is the case. Based on all of the evidence presented during this contested hearing, the court finds that the father has a significant substance abuse problem, the impact of which he still tends to deny or minimize.
Anthony T. is employed as the manager of a health and fitness center in Lincoln, Nebraska. He is highly regarded by his employer, who regards him as her "most responsible and capable employee" (Father's Exhibit 1). Before assuming this position, the father worked at a golf course. Anthony T. enjoys a close relationship with his mother, Sheila F., and his grandmother, Lolamae T. Both women traveled from Nebraska to Connecticut to attend this hearing, and both testified as witnesses on behalf of Anthony T. Both support the father's motion for Joshua's custody, and believe that he can appropriately parent the child.
The Nebraska child welfare authorities recommended that Joshua be placed with Anthony T. with "notable reservation." (Petitioner's Exhibit 4, Page 10). The NHHS worker found that Anthony could parent the child above minimal standards, but also recommended that a Child Protective Worker in Nebraska be assigned "to closely supervise "the father's parenting. (Petitioner's Exhibit 4, Pages 10 and 11). Upon receipt of the Nebraska study, Connecticut's DCF refused to approve placement of Joshua with Anthony T. The agency noted that "Placement can be reconsidered when [father] resolves his legal difficulties, successfully completes probation, and completes treatment recommended in his alcohol evaluation." (Petitioner's Exhibit 4, Page 2). DCF approved the paternal grandmother's home as an acceptable placement for Joshua. (Petitioner's Exhibit 5, Page 3).
For the past 20 months, Joshua has lived in Columbia, Conn. at the home of Wilson B., his 71-year-old great grandfather. The CT Page 14247 child's aunt and uncle, Christine B. and Steven B., also reside in that household. (Testimony of Wilson B). During this period, Anthony called Joshua on the great grandfather's telephone on one occasion. The father telephoned Joshua at his aunt and uncle's number twice. (Testimony of Wilson B.)
The evidence presented at trial supports the finding that Joshua is very attached to his great grandfather (whom he refers to as "Beepa") and his aunt and uncle. The court finds that these relatives are providing a caring and appropriate home for the child. DCF Social Worker Lorna Oakley testified that the child has a "tremendous bond" with Wilson B. and regards the great grandfather as his "psychological parent". The court accepts these opinions of the social worker as fact. Martha Roberts, a counselor with United Services in Columbia who has treated Joshua for the trauma associated with his neglect and sexual abuse, testified that the child looks to his great grandfather as his primary caretaker, and views Wilson B., Steven B., and Christine B. as psychological parents. Ms. Roberts opined that the three relatives meet Joshua's needs in a consistent fashion and that the child has a "trusting, loving relationship" in their home. She testified that removing the child from this placement at the present time would not be in Joshua's best interests. The court found Ms. Roberts' testimony to be highly credible, and ascribes great weight to her expert opinions.
Although Anthony T has articulated the desire to obtain Joshua's custody for a number of months, he has failed until recently to pay child support, send Joshua gifts, and remain in regular contact with the child through telephone calls and letters, and visits. The court does not accept Anthony T.'s explanation concerning his lack of participation in the dissolution of marriage and the neglect proceedings. Had he chosen to do so, the father could have taken affirmative steps in those cases to cultivate and maintain a relationship with his son, despite the geographical separation. Ms. Roberts testified that she has observed no evidence of a parent-child relationship between the two, and observed that establishing one would require a process "of give and take" over an extended period of time. Here, too, the court accepts Ms. Robert's opinion as fact. The totality of the evidence presented at trial leads the court to find that no parent-child relationship exists at the present time between Joshua and Anthony T.
 ADJUDICATION
CT Page 14248
In revocation proceedings, the movant must prove by a fair preponderance of the evidence that no cause for commitment exists. See C.G.S. 46b-129(g) and C.P.B. 33-10. If that burden is met, the opposing party has the burden of proof (also by a fair preponderance of the evidence) that revocation would not be in the best interest of the child. C.P.B. 33-10.
The evidence at this hearing established that the Joshua's mother continues to abuse drugs, engage in criminal activity, and neglect her child. The evidence also proved that Joshua, who has been traumatized by sexual abuse and removal from his parental home, does not have a parent-child relationship with his father. Although this was caused in part by the mother's removal of the child from Nebraska, it also resulted from the father's failure thereafter to actively pursue a meaningful relationship with Joshua. The evidence presented also supports the conclusion that until recently, Anthony T. neglected his parental duties with respect to Joshua. As noted above, he did not visit the child, maintain regular contact with him, send him gifts, or pay child support for an extended period of time prior to the eve of this hearing. Finally, the father's involvement with the criminal justice system, his substance abuse, and his apparent failure to recognize the significance of these problems, compelled DCF to disapprove his application for custody of the child in Nebraska.
Based on all of the forgoing, the court finds that Anthony T. failed to prove by a fair preponderance of the evidence that no cause for Joshua's commitment to DCF still exists. Accordingly, his motion for revocation of commitment and transfer of guardianship is hereby DENIED.
Although the preponderance of the evidence in this case did not support a finding that the father's motion for revocation should be granted, the court finds from the evidence that the father has recently made attempts to re-enter Joshua's life, and function as a parent for him. These attempts are commendable. The court believes that Anthony T., and the child's other paternal relatives in Nebraska, may be able to make a positive contribution to Joshua's life if the father consistently continues in these efforts, and is able to re-establish a parent-child relationship within a reasonable time with his six-year-old son. Based upon all of the evidence presented during this two-day contested hearing, the court finds that efforts to reunify Joshua with his father are still appropriate.[3] In CT Page 14249 conjunction with this finding, the court issues the following orders, which constitute the steps which Anthony T. will be expected to take in order to successfully reenter his son's life:
 1. Substance abuse evaluation and treatment: Anthony T. shall undergo a substance abuse evaluation conducted by an appropriate agency or individual in Nebraska. The cost of this evaluation shall be paid by DCF, and the results shall be shared with DCF, and counsel for all parties. Anthony T. shall cooperate fully with any treatment which may be recommenced. The father shall not engage in substance abuse.
 2. Parenting class: Anthony T. shall cooperate with, and successfully complete, a parenting education course conducted by an appropriate agency in Nebraska.
 3. Contacts with child: Anthony T. shall maintain frequent contact with Joshua. At a minimum, these contacts should include weekly telephone calls to the child in Connecticut, periodic cards and letters to the child, and gifts to the child on his birthday and at Christmas.
 4. Child support: Anthony T. shall demonstrate his interest and concern in Joshua's welfare by remaining current in the payment of his court-ordered child support.
 5. No criminal involvement: Anthony T. shall have no further involvement with the criminal justice system. He shall cooperate with, and successfully complete, the terms of his probation in Nebraska.
 6. Releases: Anthony T. shall sign all necessary releases to enable DCF, and its agents or designees, to monitor compliance with these expectations. The information obtained through said releases may be used in future court proceedings relative to this matter,
 7. Housing and income: Anthony T. shall maintain adequate housing and a legal source of income.
 8. Visitation: Anthony T. shall have extended visitation with Joshua at the father's place of residence in Nebraska for a period of three (3) weeks each summer. The cost of transporting the child to and from Nebraska shall be borne CT Page 14250 by the father. During the child's first visit with Anthony T. in the summer of 1999, DCF shall request an NHHS worker to visit the child at the father's home at least once in order to monitor the child's adjustment during the initial period of visitation. Anthony T. shall confer with the child's DCF worker and the child's caretaker in Connecticut as soon as possible to resolve all issues and to make all necessary arrangements related to these visits. The father may also have such other visitation with the child in the State of Connecticut as may be mutually agreed upon by DCF and Anthony T, after reasonable consultation with Joshua's caretakers.
 9.Child's place of residence: Joshua's place of residence shall be in the State of Connecticut pending further order of this court. Except for the periods of visitation referred to above, Anthony T. shall not remove the child from the State of Connecticut without further order of this court.
The court further orders that DCF shall take all necessary measures to ensure the child's safety and well-being; shall provide case management services to Anthony T.; shall develop a periodic treatment/permanency plan and share it with this respondent; shall refer the respondent to appropriate services as indicated above and monitor his progress and compliance with treatment goals, and shall monitor Joshua's welfare and the circumstances surrounding his contact with, and care by, the respondent father. DCF shall facilitate visitation as outlined above between Anthony T. and Joshua T. To that end, DCF shall provide the child's caretakers with a copy of this decision and the orders contained therein.
In order to monitor the father's degree of compliance with these court-ordered expectations, the court will conduct anIn-Court Review at the Superior Court for Juvenile Matters in Hartford on Thursday, June 17, 1998 at 2 p. m. DCF is ordered to submit a status report on Anthony T.'s compliance with the forgoing orders, and the child's overall situation, for review by the court at said hearing.
SO ORDERED.
BY THE COURT:
Dyer, J.
CT Page 14251